Okay, thank you, Kevin. So, we'll resume with Brown v. Flowers, 197011, and we'll hear from Appellant's Counsel, Mr. Schreck. Thank you, Your Honor. My name is Charlie Schreck. I represent the Appellant Defendant, Roger Flowers. May it please the court. This case is about two sexual encounters at the Pontotoc County Justice Center between a jailer, Roger Flowers, and an inmate, Brittany Brown. The primary issue for most of the litigation has been whether those two sexual encounters were consensual because, as we know from Graham v. Sheriff of Logan County, uncoerced or consensual sexual activity between jailers and inmates do not necessarily violate the Eighth Amendment, even if it would violate state law. In this case, Flowers did plead guilty to violating Oklahoma law requiring sexual activity of any kind between inmates and jailers, but here, the primary issue is not about that, but about qualified immunity. In the order denying qualified immunity to Flowers, the district court found that Flowers did not use physical coercion. He did not exhibit malice. The only possible form of coercion was providing cigarettes to Brown and her pod mates after the fact. Based on those factual conclusions, the district court held, essentially, that Flowers' gift after the fact could arguably constitute coercion and that such non-physical coercion could violate Brown's clearly established right to, quote, not be raped by a detention officer, as established in Perry v. Durrboro. There are three reasons for why the district court was incorrect to deny Flowers' assertion of immunity, but the main issue here is that Flowers' conduct didn't violate clearly established law. In the qualified immunity analysis, the district court cites Perry, Graham, and a case out of the Northern District of Oklahoma called Bates v. Mays County as clearly established law that would place officers on notice that after-the-fact gifts or post-encounter gifts would violate the Eighth Amendment, but none of those cases are sufficiently similar or particularized or tailored to the facts of this case. Each of those cases are about either physically coerced sexual activity or admittedly consensual activity. Here, it's clear from the district court's undisputed facts that we're not dealing with malicious or physical coercion, you know, maliciousness or physical coercion or an consent. This case is in the gray area because there is no law from this court or from the Supreme Court or a majority of case law in other circuits that says after-the-fact gifts constitute a possible form of coercion that would violate an inmate's right to, quote, not be raped. That right, as framed by the district court and by Brown, sounds very general because it is. The right at issue needed to be tailored and specific and granular and particularized to this case. You know, as laid out in, you know, case after case after case from the Supreme Court, such as Emmons or Westby or Mullinex, you know, so on and so forth, we know that the right at issue must be defined with specificity, that there must be an on-point case somewhere in the neighborhood that tells officers what the contours of constitutional conduct are. You know, in other words, it must place the right at issue beyond debate. There must be something on point. And because there was no case cited by either the district court or a plaintiff, Roger Flowers was entitled to qualified immunity. It was incorrect to deny it. So to drill down a little bit, unless there are questions at this time, but to drill down a little bit on each of those cases and how they're not clear. This is Judge Murphy. Yes, sir. I do have a question. The district court was particularly taken by language and gram. Yes, sir. And quoted it, indicating that where there are no penological purposes that can be inferred from the conduct, and the conduct constitutes sufficient evidence of force which is used maliciously and sadistically. Just assuming that there was no actual physical conduct here, according to that language, doesn't that indicate that the laws clearly established as of 2013, that if you had no penological interests, that a constitutional violation has been stated in a case like this? Well, I think it is. I think it's important to drill down on gram. In gram, it does say that, you know, that there was no interest from sexual abuse. Gram also says that, you know, if there's overwhelming evidence of consent, then there's no violation of the Eighth Amendment. So after 2013 and after gram, what we were left with is, you know, if it is coerced or if it's not consensual, then it is a violation. And if the reverse is true, then it was not a violation. So it breaks down a little bit in the sense that, you know, it's—I would say that that is not necessarily clearly established that anything that is—let me back up. I think that what—I think that that tends to go towards what I would call a per se violation type rule, where if there's any kind of sexual contact between inmates and jailers, that would automatically violate the Eighth Amendment. And I don't think that that's what gram was trying to do, because if you look at gram, there was— let me interrupt you. Isn't that exactly what the language does that I quoted? If there's no peniological interest, what that language in gram suggests is a constitutional violation. Right. And I guess it would be inconsistent with the holding in gram is that, you know, if there was no peniological—I mean, there was sexual contact in gram. There's two instances of it in gram, but it was still found to be constitutional, or that it wasn't a violation of the Eighth Amendment. So there are instances—what we know from gram is that there are instances of sexual contact between inmates and jailers that does not violate the Constitution. So it's not a—and I think that that's reflected in the circuits across the country. All right. Mr. Shreck, when you say that that language is at least mildly inconsistent with the holding, I take it essentially you're saying that language is dicta. If we have dicta like that, can clearly established law be made by dicta? Uh, no. Do you have case law on that? The case law I can remember off the top of my head was from a case called Morrow v. Meacham. I think that was a Fifth Circuit case. I can't remember the Tenth Circuit case off the top of my head, but we can't get clearly established law. It has to be placed beyond debate. It has to be—you can go ahead. You answered my question. Okay. Okay. I appreciate it. Thank you. Well, I would also like—so we talked a little bit about gram, and I would like to say one more thing about gram is that gram in this case are very similar. Um, gram, there you have—you had an inmate and a jailer who were flirting back and forth. The jailer brought gifts in the form of candy bars to the inmate before the sexual encounter, and then there was a sexual encounter. And those things didn't necessarily undermine the holding, which was that consensual sexual activity doesn't violate the Eighth Amendment. So, I mean, really the only difference between gram in this case is that there was deposition testimony in gram where she said, well, I wanted to have sex with that jailer. We don't have that here. So even though the facts are pretty similar, it would still tend to suggest that there is a gray area between what we have in gram, which was just admittedly consensual sexual activity and, you know, the case like Perry where it was physically forced malicious type rape. So turning to Perry, that was another case that was cited by the district court as clearly established law that Brown had a right to, quote, not be raped. So Perry is not on point, and it does not establish clearly established law here. And the primary reason is that it doesn't really square with the facts of this case. In Perry, that was a case that did have to do with sexual activity between an inmate and jailer, but that particular case was the appeal of the sheriff's denial of qualified immunity from the supervisory liability claim. So that case doesn't necessarily govern or place an officer on notice about what he or she can or can't do. So Perry, it does have language in there saying that inmates in general have a right to, quote, not be raped. But that case doesn't, wouldn't, you know, if Roger Flowers could place, could press pause, and, you know, before he had sexual intercourse with Ms. Brown and read Perry, it wouldn't necessarily tell him what he was about to do or not do was clearly unconstitutional or clearly constitutional. And that's the problem here is that there is no case where it has to do with gifts or some kind of nonphysical coercion or something that looks like that that is not physical and is not admittedly consensual. So there needed to be a case cited that filled that gap. And we just didn't get that. And, yes, sir? Oh, I'm sorry. Mr. Shirk, I did want to ask you about that. Now, we do have some of the Supreme Court cases that you alluded to do suggest that you have to have case law on point. And we do also have Hope v. Helzer in which the Supreme Court has never appealed that suggests, made, or not suggests, it says that if a constitutional violation applies with obvious clarity, notwithstanding the essence of the particular case, that if only a plainly incompetent officer still could, it would require a plainly incompetent officer to think that what he or she was doing was constitutional. So let me ask you with that in mind a hypothetical. Let's say you have a prison guard, an older man, and you have a young female inmate. And the guard said, and let's say there was, say, a group of inmates that were engaging in somewhat a, I'll just pick a name, inmate Josiah. I want you to come right now to my office. Inmate Josiah comes to the office and he says, strip down. And she's crying. And he says, turn around. I don't want to see you cry. And she doesn't say a word. He doesn't threaten her. But they engaged in sexual intercourse at that point. Would anybody other than a plainly incompetent officer think that what he was doing at that point was permitted under the Constitution? You know, I would say... Go ahead, Andrew. Thank you. What I would say is that I think that the plainly incompetent language that, you know, you see cited in every brief and in every opinion is, I think it's very interesting. So a quick point before I get to the hypothetical. So my understanding of the plainly incompetent language is that it's the end of the analysis. It's not necessarily the beginning of the analysis. So it's not, you know, you don't start with a checklist where, you know, step one, it was officer plainly incompetent. If yes, then proceed to, you know, was there an underlying constitutional violation. My understanding is that that's more the end, where if there was a but again, I don't, there's not a lot of case law that I've seen in researching this issue that clearly explains plainly incompetence or what that could mean or seen a case where it turns on that. So getting to your hypothetical, I think that there are some pretty, you know, there's some cases you're describing, you do have, you know, I don't know. I mean, it sounds like a, it sounds like a threat to me, but there's a pretty clear, you know, implicit threat of force. In this case, Roger Flowers buzzed down and said, do you want to come up? The other inmates say, go, go, go, go. She, she went to three locked doors. Yeah. So Mr. Shrek, when you're saying that, is that, are you relying on Mr. Flowers deposition testimony or are you taking inmate Brown's testimony in the light most favorable to her? I know that Mr. Flowers said what you said, but did Ms. Brown say that? The, the, the part about the inmates saying, go, go, go, or as is seeing if you want to come down there. No. Do you want to, do you want to come? Are you sure you want to do this? I mean, I know Mr. Flowers and all that. I'm not as confident that Ms. Brown agreed with any of that. I would have to go back and look at the appendix to be honest, but I'm pretty sure, I think she said something to that effect. I could be wrong, but I think that she did say she thought he was joking or something. Um, but she went up there and then, uh, according to what, you know, based on the district court's assessment of the record, and, you know, we're not questioning that at all, but that there was found to be no physical coercion. So there was, there's no testimony or anything to that effect. And he said, well, you need to strip down for me now, um, where there's some kind of force or coerciveness. It comes up here and then they, then that happened. And so really the only kind of coercion identified in the dispute of facts was the gift of cigarettes after the fact to her and the pod mates. So I think that there's a distinction being made. I think it's an interesting hypothetical because, and maybe that's, you know, uh, you can see something like that where it's not but I'm sorry, uh, Matt, can I have a more seconds? Yeah. Okay. Thank you. Um, so, um, so the, you know, I, and I guess this gets back to the big point, which is that, um, if there was, if we could point to a case where we're talking about non-physical coercion, that is a constitutional violation, that it might look like you're hypothetical. Um, and then we could draw conclusions based on that. Was it clearly established that doing this particular thing was unconstitutional? Um, but we don't have that case. We have, we have Perry, we have Graham, and then plain decided to the PLRA. So there's really not, there's really no guidance, but if there was a case that looked like you're hypothetical, then that might be, you might have a different outcome, but that's not how the analysis went. Now, she did testify, though, did she not, uh, that she was crying when she was up in the, whatever it was, the control room, and that she did testify, did she not, that, uh, Mr. Flowers told Ms. Brown, you know, turn around because he didn't want to see her crying, which, I mean, that part of my hypothetical is just straight from Ms. Brown's testimony. Well, I think there was conflicting testimony about that. I mean, that's what she said. She said that, you know, so it was disputed, um, but it was... But we have to credit that, don't we? Well... Don't we have to credit her version? Right, and that, you know, and I wasn't trying to represent as undisputed that, uh, you know, what he said. I mean, I had to, you know, there were, there weren't that many undisputed facts from the order, but, you know, the judge looked at, uh, looked at the, looked at the facts here, and that was something that was disputed, was what was said, but given all the evidence, given all the other contextual facts, we were able to conclude as undisputed that there was no physical coercion, um, and, but then there was just no follow-up case for non-physical coercion that would suggest that he can't do X, Y, or Z. So, there wasn't a lot of discussion of that, of that particular testimony, um, in the order. So, uh, but that, that was a point of contention in the underlying litigation, for sure, because she had said different things. Right. I hope that answers your question. Yeah, you sure did. Uh, Judge Forbes, uh, do you have questions? Well, I guess I just want to, going back to the coercive nature, I think the district court did recognize here, uh, in a discussion of the Ninth Circuit case in Wood and what they recognized, which is that the coercive nature of the prison setting is a given, and it's difficult to characterize a sexual relationship in prison as the product of free choice regardless, and I understand what we said in Grant, but I think you do have to recognize that the district court also basically said it's inherently coercive, uh, and, and I don't, and I don't hear you recognizing that, and I also think that that sort of fits within our remark in Graham, uh, that we made about we, uh, we think it proper to treat sexual abuse of prisoners as a species of excessive force claim requiring at least some form of coercion, not necessarily physical. Why isn't that just, uh, that exactly what we have here, uh, a species of an excessive force claim, uh, some form of coercion, not necessarily physical? Isn't that exactly what the district court found here? That's what the district court found, but I haven't, uh, I'm going to, I have a couple points about the methodology that I'm saying was incorrect on the qualified immunity. Um, so... I'm asking why isn't that clearly established that some form of coercion, it doesn't have to necessarily be physical, can certainly constitute sexual abuse as a species of excessive force claim. That's what we said in Graham. Right. So in Graham, that's kind of a hypothetical statement where there was a couple hypothetical statements in court, you know, coerced, forced sex, I guess, I don't remember the exact quote, but it was forced sex violates the constitution. So if it's not, if it's not forced or coerced, then it doesn't violate the constitution. Then it was, you know, in parent, you know, in parentheses, not necessarily physical. Right. So it's kind of hypothetical. And so, but for the requirements for qualified... It depends on how you interpret it. Doesn't well, it doesn't have to be physical. Right. No. And I, and I understand, you know, I've, I've seen those cases. I've, I've read all those nine circuit cases and all, and I understand that this is a, um, that, you know, that, that there's many, many courts that have recognized that there is this power dynamic issue. Um, but you know, what you have in Graham is the holding was that it wasn't constitutional. And so, you know, and then the reasoning they said, well, the court doesn't necessarily need to be, uh, doesn't necessarily need to be physical. Right. And so you have, but, you know, uh, clearly established law comes from, from holdings, you know, so it'd be, well, the 10th circuit in 2013 said, uh, well, it doesn't necessarily have to be physical, but, but as I understand the, the Supreme court's jurisprudence is we've got to find something on point, which, you know, in the neighborhood that says we have a case of a non-physical coercion that violates the constitution or the eighth amendment. And that, that, you know, so that that would notify any reasonable officer that that specific conduct violates it. And so with Graham, you have a situation where you have, um, you look at those facts and it would say, well, that wasn't a and then along the way, there's, there's a citation to wood. There's, there's commentary about, um, well, it may not necessarily be a physical coercion, but that doesn't necessarily clearly establish that, you know, the law that, well, if you, if the next time that there's something like this, that will, that will violate the constitution. So I think, you know, kind of going back to my analogy of, well, you know, if Mr. Flowers pressed pause in the moments before he had intercourse with Brown and read Graham, he'd say, well, I'm in line with Graham because that didn't violate the constitution. But, you know, if you reach Perry, he says, well, that's, well, I'm not doing that. So, you know, so even if it says in Graham, you know, it's kind of in the parent, you know, in parentheses, which I don't think clearly should come from parentheses, um, but not necessarily physical. Well, you know, so I guess I may be over talking this, but I think the basic idea is that Graham establishes that not all sexual activity between jailers and inmates violates the constitution. And I, and I would, I would, um, I'm not sure. I do have a follow up question. Are you familiar at all? And did your research take into Smith v. Cochran, uh, Smith v. Cochran, a 2003 10th circuit case where the plaintiff found a no qualified immunity where a plaintiff alleged that the official would remind her she was breaking the rules. And that basically that's how she forced her to have sex. But if she didn't have sex with him, he would report her misconduct. Are you familiar with that case? I think I haven't read it recently, but I, um, so I'm not familiar with it, but I do remember coming across that case and I think it was an interesting case, but, um, you know, I don't remember it, uh, well enough to be able to go deeply into it. I'm sorry. Judge Morris, uh, did you have another question? I'm sorry. No, I'm, I don't. Yeah. Uh, judge, uh, Murphy. Uh, yeah. Okay. Okay. Uh, I don't have any, uh, questions either. So we'll hear from, uh, uh, appellate counsel. All right. So may it please the court. This is Steven Caper and I'm appearing for the court to address the jurisdictional issue that we were separately asked to brief. In this case, we do have a qualified immunity issue that has been brought before the court, but the jurisdiction to hear such an issue on an interlocutory appeal is limited and narrow, and it's limited to the circumstances where the legal matter being brought before the court, not regarding, uh, a decision on the facts or weighing of the facts or rather summary judgment, uh, uh, construction of the facts is probably a better way to say that by the district court. Here we have a district court who clearly disposed of this issue based upon a construction of the facts on the issue of consent. Uh, that is not a matter that is subject to interlocutory appeal, uh, even though it involves the issue of, of qualified immunity, this is not a matter that can be heard on interlocutory appeal. Now in the briefing, the appellee has insisted that this is a legal matter and is within the narrow scope of what is immediately appealable through an interlocutory appeal on the denial of qualified immunity. But counsel started off the argument today consistent with the briefing, both the opening brief and the reply brief saying that the primary issue is whether the rates were consensual. And of course the argument built from their counsel later went on to acknowledge that there are, uh, conflicting facts on the issue of consent, specifically in response to questions on what events actually transpired in the control room, the crying and the other matters that have been brought up. So we do have conflicting facts and the matter was disposed of by means of, uh, a construction of the facts and the evidence by the trial court. And that is not subject to appeal at this point. The question of whether there was clearly established law on this particular matter is when you get to, if you get to the issue of qualified immunity or the merits of the question, that standard has not changed. The, uh, you know, we look back to 1998 when the Barney versus Pulsifer case was decided and the court there said that specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior. Uh, it is not something that requires a high degree of specificity to know that what is doing when engaging in that type of conduct is improper, never has been, uh, that standard has consistently been applied by the trial court here, by the, uh, by the Graham court for that matter. Um, by every court that is in the Smith court, as Smith was mentioned just recently, uh, in questions by, uh, one of the judges. And if you look at the opening brief of the had a constitutional right to be free from sexual abuse while in state custody. So counsel's argument that what Mr. Flowers did or didn't feel or what he thought of in that moment is not relevant. The qualified immunity standard is, uh, is looked at from the perspective of a reasonable jailer in this case where reasonable state actor, um, and the reasonableness standard is what governs. I mean, if we were to look at the subjective intent, as I think was pointed out in our brief, our opening brief, Mr. Flowers admitted he knew what he was doing was illegal. Um, he knew that he was going to get fired for it. He knew it was improper, but we look at this from a reasonable jailer point of view. And from a reasonable jailer point of view, there clearly is a violation when you engage in sexual abuse of any inmate. And, uh, the comment that, or the question that was asked earlier having to do with whether there's a legitimate penological purpose for the action is what makes it improper. There's clearly not a legitimate penological purpose. There, there's never a legitimate, a legitimate penological purpose for that type of misconduct. So... Then why in, uh, in Graham did the panel unanimously conclude that the descendant, uh, was entitled, uh, to qualified immunity? Because that was a prison guard having intercourse with an inmate. And obviously there's no legitimate penological purpose for the two of those individuals to have intercourse, right? Right. Yeah. And I think the distinguishing... I beg your pardon. No, you go ahead. Sorry. I think the distinguishing characteristic here is that in the Graham decision, for whatever reason, the, uh, the plaintiff there, Ms. Graham, chose not to assert lack of consent. And so therefore presented to the court of appeals on a legal matter, that being the absence of any evidence of consent legally, that there was no, uh, lack of consent to assert. So in this particular case, the reason why the, uh, rape statutes in Oklahoma do not require, uh, uh, in some proof of that element is because of the improper balance of power between a jailer and an inmate. There's always going to be an element... I beg your pardon? Right. In terms of state critical law, there is that it's unquestionably a crime. Now, not every crime violates the constitution. And so what we do know from Graham, based on what you just said, is that the imbalance of power does not always elevate the commission of this particular crime, rape, under Oklahoma law. It's defined as respect to a prison guard and an inmate that it's not... That imbalance of power does not always elevate that crime into a constitutional violation. We know that, uh, because what Graham said, that there was that rape, uh, just as Mr. Flowers submitted, and we know from Graham that that was not a constitutional violation, right? So there has to be something... So there has to be something more that we know from Graham than simply the fact that there is this imbalance of power between a guard and an inmate, right? Well, reading Graham, it says that any slight evidence of coercion will suffice. It says that they intimate that they might have ruled differently had there been any argument raised, and they even suggested some very mild ideas of what within the record might have constituted evidence of coercion. Uh, so I think I read Graham to be a technical issue of the issue wasn't properly brought before the court, and therefore they weren't... The Tenth Circuit was not going to go and find an element of coercion where the, uh, the... Ms. Graham herself had brought it to the court without asserting that as an issue. I do think separately... does change, uh, how... whether Graham would still be good law. I think now it is any sexual act, similar to what the Oklahoma statute says, any sexual act by a jailer against an inmate would be actionable by, uh, the inmate, would be something that lacked any legitimate penological purpose and would constitute, uh, an excessive force claim under the Eighth Amendment. So I understand that there's the Graham decision out there, but whether Graham applies or whether Graham was overruled by Section 1997E, I believe we have a distinct set of circumstances here, and the circumstances are we have evidence of coercion in this case. We have a trial judge who found coercion. Okay. You're not, uh... I know you're relying on 1997E, but are you, based on what you just said, are you or are you not relying on Graham to represent the clearly established... the precedent that would have alerted District Flowers, uh, that this was a violation of clearly established law? In fact, if you're saying that it may have been overruled, that makes me think that, well, you're really not relying on Graham for the clearly established law, or are you? Well, if Graham is overruled at all, it has to do with the element of coercion and whether that's necessary. The clearly established law is 1997E. That's a federal statute that clearly makes it actionable for an inmate who is the subject of any sexual contact with a jailer, any kind of patient. I didn't know that. I thought that 1997E doesn't use the word actionable. I don't have it in front of me, but that action can't be brought. I thought 1997E was simply saying you can bring an action in the absence of a physical injury in a couple of situations. One in which there was sexual abuse. You can break that lawsuit, but I don't know of any cases, and I could be wrong, that have said, what you've done is a violation of the Constitution because of what Congress did in 1996 in enacting 1997E. Because you fall within this statute, ergo, what you did was violating the Constitution. Am I wrong about that? I thought that 1997E was simply a license to bring a suit for emotional that the policy is that jailers cannot have intercourt, any sexual act with an inmate. You're correct that it allows this action to go forward in the absence of the physical harm or physical contact, but I think the policy statement that is enacted within and underlying that change, and it was in 2013, Judge, you said 1998. I think you might have been referring to my reference to the Barney case, but it's 2013. I've referred to the PLRN. I thought 1997E was adopted in 1996. I could be wrong. Okay. In any event, what I'm saying is that the legislative history of that change and the change itself are a clear policy statement that this is an improper act by a jailer, and any reasonable jailer who sees that policy change enacted by statute would know that it's improper to have a sexual act with an inmate. I cited yesterday in a notice of supplemental authority, I don't know if that's been brought to your attention yet, the 11th Circuit case that applies the Graham case and the language of 1997E, the revised language, and finds that that is a very clear policy statement. It calls it the clearest statement of what the federal standard on public policy is in that regard. That's the Scogners v. Lockhart case. Again, I don't know if you all have seen that yet. It was just brought to my attention yesterday, and it was the subject of a notice of supplemental authority that was without the change to 1997, which came, I believe, the year after Graham was decided. We have evidence of coercion, and the Graham case doesn't change the standard, doesn't change the qualified immunity notice that coercive sexual contact with an inmate is a violation. Looking at that from, there's nothing about Graham, and Graham recites the same standard as was established in Guiron and Pulsifer and the cases that came before it. It doesn't change the standard, and our trial court in this case said the same thing in its decision. The standard remained the same. The notice to the, to guards or jailers or anyone who might be subject to the do, to engage in any kind of coercive sexual conduct. Again, the standard, and coincidentally, that same standard, and I think referencing the Graham case, has been applied in the Perry case, which came four or so years after Graham. The standard hasn't changed. The Guiron standard is still the one that we're applying, the Pulsifer standard, and any reasonable jailer would know they are not to be having sexual contact with inmates by virtue of not only those decisions, but both the old and the current version of 1997E. Okay, let me follow up. I think maybe one final follow-up question. In terms of what coercion is and what sexual abuse is, that would have clearly alerted a prison guard to knowledge that what he or she was doing was an obvious constitutional violation. We have, on the one hand, on one end of the spectrum, Graham. If it's purely consensual, we know that it's Graham, but that's okay. We know from the Smith v. Cochran case that if you essentially make a threat, if you say to an inmate, he has sexual relations with me or I'm going to report misconduct, we know that that falls on the other end of the spectrum, the spectrum of sexual abuse. A couple of months ago, Judge Baldock wrote a very thorough opinion, Ulrey v. Bradley, which he goes through all of the sexual abuse cases from our circuit, and really from all of the circuits, and goes through a lot of cases involving use of force. Are there any precedents that you can identify that say that prior to this incident or these two incidents between Brown and Flowers, that this coercion is enough to elevate to a constitutional violation, is the absence of, for example, in Smith, a threat, or in many of the cases that are elucidated in Ulrey, where there's just crude, gross, forcible physical contact, and on the other hand, on the other end of the spectrum, Graham, pure consent, are there any cases that you can identify in our circuit that have said, just this imbalance of power, and even accepting Brown's version of the death, that that would have been a constitutional violation? Well, the two points that I would make is, to directly answer your question, Graham itself says that de minimis, you set this sort of linear equation for how much force is being used, but Graham says that de minimis coercion is sufficient. So, I think Graham itself puts everyone on notice that de minimis coercion is at issue, but the point, I think, that comes before that is, we're now getting into analyzing the evidence and the facts and questioning how the trial court construed the facts on coercion, and that is precisely what I began my argument by saying is outside of the scope of what is subject to review at this time. That's a question of fact and a question of the sufficiency of the evidence. That is not the legal question of whether or not there's a clearly established law. Okay. Thank you. Thank you very much. Judge Moritz, do you have questions for counsel? No further questions. Okay. Judge Murphy? No further questions. All right. Thank you, counsel. In the Brown versus Flowers case, I thought both of you did an excellent job, both in your oral and written advocacy, and we appreciate the difficult case, and we appreciate the excellent advocacy of both of you. So, that matter will be submitted in our